[34 NYS3d 432]

In the Matter of MARJORIE MODESTIL, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, June 23, 2016

APPEARANCES OF COUNSEL

*Jorge Dopico, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Yvette A. Rosario* of counsel), for petitioner.

*Marjorie Modestil*, respondent pro se.

**OPINION OF THE COURT**

Per Curiam.

Respondent Marjorie Modestil was admitted to the practice of law in the State of New York by the Second Judicial Department on January 18, 1995. At all times relevant to this proceeding, respondent maintained an office for the practice of law within the First Judicial Department.

By notice of motion dated March 16, 2016, the Departmental Disciplinary Committee (Committee) seeks an order pursuant to Rules of the Appellate Division, First Department (22 NYCRR) § 603.4 (e) (1) (i), (ii), (iii) and (iv), as well as Judiciary Law § 468-a, immediately suspending respondent from the practice of law until further order of the Court based upon her willful failure to cooperate with the Committee's investigation of allegations of professional misconduct, an admission under oath that she has committed an act or acts of professional misconduct, other uncontested evidence of professional misconduct, her failure to pay money owed to a client which is demonstrated by a judgment, and her failure to comply with the Office of Court Administration (OCA) registration requirements, all of which according to the Committee, immediately threaten the public interest.

In September 2014, the Committee opened an investigation into respondent's professional conduct as a result of two related complaints. The complaints were based upon the same real estate transaction and essentially alleged that respondent had been retained in November 2010 by the seller to handle the closing of the sale of a liquor store. Both complainants alleged that respondent had not responded to their communications regarding $24,500 respondent had received as part of the closing, which was to be held in her trust account for taxes owed to the New York State Department of Taxation.

By letters dated November 5 and December 4, 2014, the Committee provided respondent with copies of the two complaints

and requested she file an answer. Although the USPS tracking printouts showed that the letters were delivered to respondent at her Brooklyn residence, and one of the return receipt cards for the letters sent by certified mail was signed for, respondent did not answer the complaints.

On March 9, 2015, respondent informed the Committee's investigator that in June or July 2014 she had moved from the Manhattan business address as listed on the OCA website and that she now received mail at her Brooklyn home address.

In January 2015, the Committee received a complaint from another client of respondent, alleging that he paid her $2,500 but she did not perform work on his case. Attached to the complaint was a February 20, 2014 judgment from Civil Court, Kings County, against respondent, awarding the client $2,520.

By separate letters dated April 29, 2015, the Committee provided respondent with copies of all three complaints and requested she file answers. Once again, although the USPS tracking printouts showed that the letters were delivered, and two out of three return receipt cards for the letters sent by certified mail were signed for, respondent did not answer the complaints.

On July 22, 2015, by in-hand personal service to respondent's new and current residence in New Jersey, the Committee served respondent with a subpoena duces tecum issued by this Court on June 30, 2015, directing her to appear before the Committee on July 27, 2015. On July 23, 2015, respondent phoned the Committee stating that she was not then prepared for a deposition as she "did not have the documents in order." The deposition was adjourned until after respondent submitted answers to the three complaints, which were now due August 11, 2015.

On August 14, 2015, respondent telephoned the Committee and explained that she missed the August 11 deadline because she needed more time to respond to the complaints. Respondent was granted an adjournment until August 28, 2015. The Committee's letters dated August 14, 2015, memorializing this conversation, also advised that this would be the "final extension" and if she did not submit a response by the deadline the Committee "may have no alternative but to make an appropriate application to the Appellate Division."

On September 18, 2015, the Committee served respondent with a new subpoena duces tecum dated September 14, 2015,

requiring her appearance on September 22, 2015. According to the USPS tracking, the letter sent by certified letter was delivered on September 21, 2015, and the signature on the return receipt was the same signature from a return receipt of a certified letter subsequently sent by the Committee in December 2015, which was admittedly received by respondent. Respondent did not appear on September 22, 2015, and during her subsequent deposition, she testified that she never received the subpoena and did not know who signed the return receipt.

On October 1, 2015, the Committee served respondent with another subpoena duces tecum directing her appearance at a deposition on October 28, 2015. On October 5, 2015, the Committee received an answer from respondent with respect to the third complaint. Respondent stated that, inter alia, the client retained her to appeal his criminal conviction and paid her $2,000. She stated that she informed him that he would be responsible for obtaining the transcript of the criminal proceedings. Respondent then fell ill, having lost vision in her left eye due to retinal detachment and, as a result, was out of the office due to surgery. Respondent explained that during that time, the client had still not obtained the transcript, thus causing delays in perfecting his appeal. Respondent stated that although she offered him a partial reimbursement for the work she had performed, he wanted a full refund. Respondent did not address the judgment obtained against her.

On October 15, 2015, the client replied to respondent's answer, stating that he was rarely able to contact her about his case and that when he did reach her, she would promise to call him back but never did so.

On October 28, 2015, respondent appeared, pro se, for her deposition. She admitted that she had not paid her attorney registration dues for the most recent biennial period (2014-2015) claiming insufficient funds. She also acknowledged that although she received copies of the first two complaints and the various notices from the Committee requesting answers, she did not have a good reason for not providing them, stating that it had been a stressful time. Respondent conceded that since she had represented the first client in the 2010 liquor store closing, he could have a complaint against her. She implied that the second complainant, the buyer, had no standing to complain. Respondent admitted that she received two checks, one for $12,000 and the other for $12,500, from the buyer and seller, for her to hold in escrow pending the closing,

and that she "put them in the bank," into her Chase IOLA account.

In her deposition testimony, respondent admitted that the $24,500 was no longer in the account as she had spent most of the money. She testified that her family was not helping her with her father's expenses and that she had been facing financial problems. Respondent denied using the money for personal expenses, however, stating rather, that she bought advertisement for her law practice. Out of the $24,500 deposited into her IOLA account, respondent testified that she believed about $600 or $800 remained, and that she had hoped to replace the money from legal fees she earned after advertising her law practice.

Respondent admitted that she knew she should not have taken the money, and that she took it without permission or authority in order to deal with her familial problems. Respondent admitted that she had not acted appropriately and stated that she had felt desperate at the time.

With respect to the third complaint, respondent conceded that although she received a copy of the summons and complaint for the Kings County Civil Court matter, she failed to appear and did not request an adjournment because she was in the process of moving and did not take it seriously. She testified that she had not satisfied the $2,520 default judgment obtained against her because she did not have the money to pay it and had no current source of income.

In September 2015, the Committee subpoenaed JP Morgan Chase for all respondent's personal, business, and attorney trust account records for the time period November 1, 2010 through September 2015. The records provided were for two attorney trust accounts (IOLA), and a personal/business checking account. The Committee's investigative accountant used these records to create a ledger (an Excel spreadsheet) in which the bank statements, canceled checks, and deposit slips were used to reconstruct the account transactions for the audit period. The records were not received in time for respondent's deposition testimony.

A review of the records of the IOLA accounts reveal multiple transfers from and between respondent's IOLA accounts to her personal/business account, as well as $0 to low balances in her IOLA accounts including a withdrawal of all but $100 of the monies she received from the buyer and seller and which she was required to hold in her attorney trust account as part of the closing.

The records also substantiate the Committee's further assertion that respondent misappropriated the trust funds without permission or authority to buy consumer goods from various merchants.

By letter dated December 22, 2015, the Committee sent respondent a copy of the Excel spreadsheet and the bank records for all three accounts and asked her to advise the Committee by January 4, 2016, whether they were accurate in showing that she had deposited the $24,500 into her trust account and then proceeded to transfer the money into her personal account for her own personal purposes. The Committee also requested respondent explain the discrepancy between her deposition testimony and the bank records regarding her claim that she spent the money on advertising, while the bank records showed that she spent the money on consumer goods.

On January 4, 2016, respondent telephoned the Committee stating that she needed more time to respond to the Committee's letter which was received by her on December 29, 2015. Despite being granted an extension to January 18, 2016, respondent did not provide a response. On January 19, 2016, the Committee telephoned respondent, reminded her of her failure to respond, and permitted her to submit an electronic version of her response, that day, by 5:00 p.m., and to follow up with a hard copy. On January 20, 2016, respondent telephoned the Committee stating that she had a problem sending her response to the email provided. By letter dated January 21, 2016, sent by email, first-class mail and certified mail return receipt requested, the Committee gave respondent one last extension and directed her to submit a response to its December 22, 2015 letter by January 28, 2016. Although the certified letter was returned to the Committee marked "unclaimed, unable to forward," the first-class letter and email were not returned. Respondent failed to submit a response to the Committee's motion.

The Committee now moves to suspend respondent, pursuant to 22 NYCRR 603.4 (e) (1), which authorizes this Court to suspend an attorney from the practice of law pending consideration of the charges of professional misconduct upon a finding that the attorney is guilty of professional misconduct immediately threatening the public interest.

Such a finding may be based upon:

> "the attorney's default in responding to the petition or notice, or the attorney's failure to submit a writ-

ten answer to pending charges of professional misconduct or to comply with any lawful demand of this court or the Departmental Disciplinary Committee made in connection with any investigation, hearing or disciplinary proceeding" (22 NYCRR 603.4 [e] [1] [i]; *see also Matter of Gujral*, 307 AD2d 28 [1st Dept 2003]; *Matter of Stein*, 287 AD2d 32 [1st Dept 2001]).

In this Court's view, respondent's failure to fully cooperate with the Committee's investigation of her professional misconduct by repeatedly failing to provide information requested by the Committee; providing apparently false testimony regarding her financial accounts; her admissions made during her deposition that she intentionally converted and/or misappropriated client and third-party funds of $24,500; and her willful failure to satisfy her former client's $2,520 judgment entered against her, constitutes professional misconduct immediately threatening the public interest, warranting her immediate suspension under 22 NYCRR 603.4 (e) (1) (i), (ii), (iii) and (iv) (*Matter of Roth*, 131 AD3d 314 [1st Dept 2015]; *Matter of Wilson*, 122 AD3d 1 [1st Dept 2014]; *Matter of Bloodsaw*, 87 AD3d 190 [1st Dept 2011]).

Further, respondent's acknowledgment that she was delinquent in paying her attorney registration fee for the biennial period of 2014-2015, and her failure to notify OCA of changes to her business address within 30 days of such change as required by Judiciary Law § 468-a (2) constitutes another independent ground for suspension (*Matter of Banji*, 106 AD3d 73 [1st Dept 2013]; *Matter of Schulze*, 1 AD3d 1 [1st Dept 2003]; *Matter of Hest*, 308 AD2d 85 [1st Dept 2003]).

As fully detailed above, while respondent provided limited cooperation by eventually submitting an answer to the third complaint and appearing for a deposition, she otherwise did not cooperate by repeatedly failing to respond to the Committee's request to review the Excel spreadsheets and bank account records for accuracy and to explain her apparent false deposition testimony regarding her use of the trust funds, and her failure to submit answers to the two related complaints. In addition, given respondent's admissions during her deposition, as well as the subpoenaed bank records, we find that the record presents evidence that respondent misappropriated and/or converted attorney trust funds. Further, there is uncontested

evidence of respondent's failure to satisfy her client's judgment.

In short, respondent's persistent uncooperative behavior has impaired the Committee's ability to swiftly adjudicate the complaints filed by respondent's former clients. Such behavior "evinces a shocking disregard for the judicial system and the Committee's investigation" (*Matter of Lefrak*, 46 AD3d 56, 59 [1st Dept 2007]; *see Matter of Muri*, 303 AD2d 86 [1st Dept 2003]).

Accordingly, the Committee's motion should be granted and respondent suspended from the practice of law pursuant to 22 NYCRR 603.4 (e) (1) (i), (ii), (iii) and (iv), effective immediately, and until such time as disciplinary matters pending before the Committee have been concluded, and until further order of this Court.

TOM, J.P., RENWICK, RICHTER, KAPNICK and WEBBER, JJ., concur.

Respondent suspended from the practice of law in the State of New York, effective the date hereof, until such time as disciplinary matters pending before the Committee have been concluded, and until further order of this Court.